## Commonwealth of Pennsylvania, Plff. in Err., *v.* A. L. Gordon and J. B. Henderson, Exrs. of Paul Darling, Deceased.

To establish, by the provisions of a will, the conversion of real into personal property, the will must direct it absolutely, irrespective of contingencies; in other words, there must be an imperative direction to sell.

A will in which there is no absolute direction to sell lands situate out of the state, but the power of the executors to sell is made dependent on the contingencies that cotenants should sell and that the executors should realize the same price as the cotenants, does not work such conversion.

Such lands are not, nor is the fund arising from a sale thereof, liable to a collateral inheritance tax, although the will directs that if there be not means enough to pay the legacies without it, a sufficient amount shall be taken from the proceeds of such lands to pay them, and although there be not enough to pay such legacies without such proceeds.

(Decided October 25, 1886.)

Error to the Common Pleas of Jefferson County to review a judgment ordered for J. B. Henderson, surviving defendant, on a case stated. Affirmed.

---

NOTE.—A contingent power of sale does not work a conversion. Machemer's Estate, 140 Pa. 544, 21 Atl. 441. The direction must be absolute (Sill v. Blaney, 159 Pa. 264, 28 Atl. 251); or there must be an absolute necessity to sell or such a blending of the realty and personalty as to clearly show that the testator intended to create a fund out of both and to bequeath the fund as money. (Irwin v. Patchen, 164 Pa. 51, 30 Atl. 436). A mere naked power to sell is not sufficient. Sheridan v. Sheridan, 136 Pa. 14, 19 Atl. 1068; Fahnestock v. Fahnestock, 152 Pa. 56, 34 Am. St. Rep. 623, 25 Atl. 313. The direction must be positive and explicit, irrespective of all contingencies and independent of all discretion. Becker's Estate, 150 Pa. 524, 24 Atl. 687.

By agreement of parties the following case was stated for the opinion of the court in the nature of a special verdict.

"Paul Darling, of Brookville, Jefferson County, Pennsylvania, was the owner of personal property and real estate in the state of Pennsylvania, and also, as tenant in common with others, of certain wild and unimproved lands, situate in the state of Wisconsin. He was never married, his nearest relatives being a sister and a half sister. He made a will, making specific devises of certain of his real estate in Pennsylvania, and certain specific bequests, providing as follows: 'My executors shall pay the legacies herein given, along from time to time as they have the means (and they shall exercise their own judgment as to the order in point of time in which they will pay them. No legacy shall bear interest by reason of its payment being deferred), and should there not be means enough to pay the legacies without it, a sufficient amount shall be taken from the proceeds of sales of western lands to pay them.'

"The provision of the will as to the Wisconsin lands is as follows: 'I own an equal share with R. G. Wright, Byron D. Hamlin and Henry Hamlin, in land on the Pine and Menominee rivers, in the state of Wisconsin.. Said land shall be held until such times as those who own with me think it best to sell it, or parts of it, from time to time, if they think best; and whenever the others of said owners are about to sell their interests in the whole or any part of the land, then my executors shall join with them in making such sale or sales, or make sale of my interest, if the same price that the others are getting can be obtained therefor. And my executors are hereby authorized and empowered to make, execute, and deliver all necessary deeds and conveyances to perfect such sale or sales.'

" 'I own an equal share with Thomas K. Litch and R. G. Wright in land on the Peshtigo and Pine rivers, in the state of Wisconsin. This I desire also to be held until such time as Litch and Wright think best to sell, and are about to sell, as mentioned concerning the other owners of the land last before mentioned, when my executors shall sell and convey as mentioned for the sale and conveyance of that land.'

"After the specific devises and bequests, come these provisions, *viz.:* 'If any residue of my estate remains after payment of all the foregoing bequests and sums, I direct that out of such residue Edward Scofield shall be paid the sum of $3,000 per

year for nine years, and Harry C. Litch, Ed. A. Litch, J. B. Henderson, and W. H. Gray shall each be paid the sum $1,000 per year for ten years. Should it be necessary to abate any of the bequests in this item, they shall all be abated *pro rata.*'

" 'Should any further residue remain, it is my will that the same shall be divided and paid annually, if it may be certainly known, between the Presbyterian and Methodist churches of Brookville in the proportions of two thirds to the Presbyterian Church and one third to the Methodist Church, until said residue is used up.'

"A. L. Gordon and J. B. Henderson were nominated and appointed executors of the will; and upon the death of said Paul Darling the will was duly proven in the register's office of said Jefferson county, and letters testamentary issued by the register to the executors named. The said executors informed the register of all the estate of their said testator, and he caused all the personal and real estate in Pennsylvania, but not the said land in Wisconsin, to be appraised; and the collateral inheritance tax on it was paid by said executors. There was no appeal from said appraisement or proceedings.

"Some time after the death of Mr. Darling, Thomas K. Litch died, leaving heirs at law. Subsequently, R. G. Wright and the heirs of Thomas K. Litch, deceased (being joined therein by the executors of Paul Darling), sold the said Wisconsin lands owned by them. And some months after the first sale R. G. Wright, Byron D. Hamlin, and Henry Hamlin (being joined therein by the said executors), sold the said Wisconsin lands owned by them. Before making said sales, said executors were obliged to and did prove and record the will of said testator in the proper offices therefor, in the counties of Oconto and Marinette, Wisconsin. Edward Scofield is a citizen of and resides in the state of Wisconsin.

"The net amount of the Darling estate out of these sales was $184,795; 5 per cent upon that amount is $9,239.75.

"The estate in Pennsylvania was insufficient to pay all the testator's bequests.

"Under these facts was the said Wisconsin land, or is the said fund, liable to collateral inheritance tax under the laws of Pennsylvania? If so, judgment to be entered in favor of the plaintiff for the amount of such tax, to wit, the said sum of $9,239.75, and if not, then judgment to be entered in favor of

the defendants.    Each party to have the right to take a writ of error to the judgment of the court."

The court ordered judgment for J. B. Henderson, surviving executor; and the commonwealth took this writ, assigning such action of the court as error.

*Lewis C. Cassidy,* Atty-Gen., *Robert Snodgrass,* Deputy Atty-Gen., and *White & Scott* for plaintiff in error.

*Jenks & Clark* and *Charles Corbet* for defendants in error.

PER CURIAM:

In Anewalt's Appeal, 42 Pa. 414, and other Pennsylvania cases, it has been held that to establish a conversion of real into personal property, the will must direct it absolutely, or out and out, and irrespective of contingencies; in other words, there must be an imperative direction to sell.

An inspection of the will now before us shows that the rule above stated does not apply.    "Said land," says the will, "shall be held until such times as those who own with me think it best to sell it, or parts of it from time to time if they think best; and whenever the others of said owners are about to sell their interests in the whole or any part of the land, then my executors shall join with them in making such sale or sales, or make sale of my interest, if the same price that the others are getting can be obtained therefor."

There is here no absolute direction to sell; on the other hand the power of the executors was made to depend on two contingencies:    1, that the testator's cotenants should sell; 2, that they, the executors, should be able at that time to realize the same price as that which the cotenants might receive.    Under any other conditions the executors were without power, and if they could sell at all for the purposes of the settlement of the estate, the power so to do must be derived from some other source than the will, and in the meantime the land must be held as land.

This conclusion relieves us from the consideration of the remaining question, that is:    that if there was a conversion the register should have appraised this property when he appraised the balance of the estate.    This might be so had there been anything in this connection for him to pass upon, but as there was not, we need not discuss an abstract question.

The judgment is affirmed.