JOSEPH E. PENFIELD, Plaintiff and Appellant, *v.* CHARLEMAGNE
    TOWER, JR., RICHARD H. LEE, and JULIUS A. BAILEY, as
    Trustees of the Residuary Estate of CHARLEMAGNE TOWER,
    Deceased, Defendants and Respondents.

**1.  Express Trust Suspends Power to Alienate — Validity,
    by What Law Governed.**

An active or express trust suspends the absolute power of alienation
during its continuance, and such a trust is therefore void when it is to
continue for longer than lives in being at the death of the testator.
The absolute power of alienation in this state cannot be suspended for
longer than the continuance of the lives in being at the testator's death,
except as provided in § 2745 of the Compiled Laws. The power to
change the trust property from real to personal estate will not save the
trust from the condemnation of the statute. The validity of a trust as
to real estate is to be determined by the laws of its *situs*: as to personal
property, by the laws of the domicile of the testator at the time of his
death.

**2.  Equitable Conversion; Trust in Personalty Governed
    by Lex Domicilii.**

Where the will directs the sale of real estate expressly, or by clear
implication, or where a sale is absolutely necessary to the execution of

the provisions of the will, such real estate is equitably converted into personalty from the time of the testator's death; and as to such real estate, the trust is a trust of personal property, and its validity is to be determined, not by the laws of the *situs* of the real property, but by the laws of the jurisdiction in which the testator was domiciled at the time of his death.

**3. Same; No Conversion in This Case.**

Provisions of the will examined and *held* not to create an equitable conversion of real property into personalty.

**4. Void Trust; Power of Sale Under.**

A power of sale dependent on a void trust falls with the trust.

(Opinion Filed June 3, 1890.)

*A*PPEAL from district court, Cass county; Hon. WILLIAM B. McCONNELL. Judge.

G. H. Phelps for appellant, (Messrs. Burnham and Tillotson of counsel) argued: That the will did not direct a conversion of the real property into personalty; that there was no express direction to sell the realty; nor does it express any clear intention that the realty should be converted. That the test is: Has the will absolutely directed that the real estate be turned into personal; Pomeroy's Equity, §§ 1159–60; Hobson v. Hale, 95 N. Y. 88; Brewer v. Brewer, 18 N. Y. Supreme Ct. 147; Parker v. Linden 113 N. Y. 28; Scholle v. Scholle, id. ib. 261; Hunt's Appeal, 105 Pa. St. 128; Lindley's Appeal, 102 id. 235; Lynn v. Gephart, 27 Md. 547; Cook v. Cook, 20 N. J. Eq. 375, Parker v. Glover, Atl. Rep. 217; Green v. Johnson, 4 Bush 164; King v. King, 13 R. I. 501; Hammond v. Putnam, 110 Mass. 232; Shaw v. Chambers, 48 Mich. 355; Dodge v. Williams, 46 Wis. 70; Redfield on Wills, vol. 1, p. 433 and vol 2, p. 125; Ford v. Ford, 33 N. W. 188; Jones v. Thockmorton, 57 Cal. 368.

S. G. Roberts, for respondent: Argued that the power of alienation was not suspended by the will, because the real estate is devised to the trustees with power to convey; that the will clearly expresses an intention that the realty be converted. Lent v. Howard, 89 N. Y. 169; Page's Estate, 75 Pa. St. 87; Craig v. Leslie, 3 Wheaton, 563.

CORLISS, C. J. The disposition of this case depends upon the validity of a trust attempted to be created by the will of

Charlemagne Tower, so far as real estate situated in this state
is concerned. The plaintiff by this action seeks to recover $250
paid by him to defendants under a contract for the sale and
purchase of real estate owned by Charlemagne Tower in his
life-time, the defendants acting as trustees under his will in
making the contract, and agreeing to refund to plaintiff the
money in case they could not convey a perfect title. A deed
having been tendered by defendants, as trustees, plaintiff re-
fused to accept the same, claiming that while the deed was suf-
ficient in form to transfer the title of the testator, the defend-
ants had no authority to execute a deed of the property, for the
reason that the trust which the will purports to create is void,
as to real estate in this jurisdiction because in contraven-
tion of the statute against perpetuities. For this reason the
plaintiff insists that he has a right to recover the $250 paid.
The facts are all presented in the complaint. Defendants de-
murred, and had judgment on the demurrer in the court below,
the court holding the trust to be valid. Was this error? The
testator has assumed to create a trust as to his residuary estate
in favor of his widow, children, and grandchildren. The will
makes specific provisions as to the distribution of the income
among the beneficiaries under the trust, which however are im-
material so far as the question presented by this appeal is con-
cerned. This trust is to continue until the period for distribu-
tion of his estate shall arrive. That period is at the expiration
of twenty-one years from and after the death of the last sur-
vivor of his children and grandchildren living at the time of
his death. There is a provision that, in case it is unlawful to
suspend the power of alienation twenty-one years after the
death of all the children and grandchildren of the testator liv-
ing at the time of his death, then the period of distribution
shall be twenty-one years after the death of the last survivor of
his children and grandchildren living at the date of his
will. This provision was unnecessary. The common-law
rule regulating perpetuities permits the tying up of
property for lives in being at the death of the tes-
tator, and twenty-one years in addition. It does not limit
the lives to those of persons in being at the date of the will.

McArthur v. Scott, 113 U. S. 340, 5 Sup. Ct. Rep. 652; Lang v. Wilbraham, 2 Duer, 171; Hosea v. Jacobs, 98 Mass. 65; Lang v. Ropke, 5 Sandf. 363; 4 Kent, Comm. 283, note 1. Said the court in McArthur v. Scott: "By the law of England the question of remoteness depends upon the state of facts at the time of the testator's death, though differing from that existing at the date of the will." The trust created by this will is perfectly good at common law. The law was finally settled in Cadell v. Palmer, 1 Clark & F. 372. In this case the house of lords decided that the true limit of the rule against perpetuities was "a life or lives in being and twenty-one years afterwards, without reference to the infancy of any person whatever." To same effect are Barnum v. Barnum, 26 Md. 119; McArthur v. Scott, *supra*; 1 Jarm. Wills, 508-517; Waldo v. Cummings, 45 Ill. 421; Philadelphia v. Girard's Heirs, 45 Pa., St. 9; Toms v. Williams, 41 Mich. 552, 2 N. W. Rep. 814; Wilson v. Odell, 58 Mich. 536, 25 N. W. Rep. 506; Hale v. Hale, 17 N. E. Rep. 470; Brown v. Brown, (Tenn.) 6 S. W. Rep. 869. The law allows the power of alienation to be suspended beyond this period during the time of gestation in cases of an infant *en ventre sa mere*. Waldo v. Cummings, 45 Ill. 421; Jarm. Wills, 415-517. And there may be added two periods of gestation. Says Mr. Jarman: "A possible addition of the period of gestation to a life and twenty-one years, occurs in the ordinary case of a devise or bequest to A, (a male) for life, and after his death to such of his children as shall attain the age of twenty-one years, or indeed in the case of a devise or bequest simply to the children of A. (a male) who shall attain majority, though not preceded by a life interest. In either case A. may survive the testator, and leave a wife *enciente*, and as such child would not acquire a vested interest until his majority, the vesting would be postponed until the period of twenty-one years beyond a life in being, with the addition, it might be, of nine or ten months; and if to either of these hypothetical cases we add the circumstance that A., the parent, were, as of course he might be, an infant *en ventre sa mere* at the testator's decease there would be gained a double period for gestation, namely, one at the commencement and an-

other at the intermediate part of the period of postponement. To treat the period of gestation, however, as an adjunct to the lives, is not, perhaps, quite correct. It seems more proper to say that the rule admits of the absolute ownership being suspended for a life or lives in being, and twenty-one years afterwards, and that for the purposes of the rule a child *en ventre sa mere* is considered as a life in being." It is only in cases of gestation that the period of twenty-one years can be extended. In Cadell v. Palmer, 1 Clark & F. 372, in the house of lords, it was declared to be the unanimous opinion of the judges that there cannot be added to the period of twenty-one years an absolute period equal to the ordinary or longest period of gestation irrespective of the existence of gestation, but that the time can be enlarged only in those cases in which gestation exists. This is the settled law. But the period of twenty-one years is an absolute period, and the lives during which the absolute period of disposition is suspended are not necessarily the lives of the persons who are interested in the property. Said the court in McArthur v. Scott, 113 U. S. 340, 5 Sup. Ct. Rep. 652: "The rule of the common law by which an estate devised must at all events vest within a life or lives in being, and twenty-one years afterwards, has reference to time and not to persons. Even the life or lives in being have no reference to the persons who are to take, for the testator is allowed to select as the measure of time the lives of any persons now in existence; and the twenty-one years afterwards are not regulated by the birth or the coming of age of any person, for they begin not with a birth, but with a death, and are twenty-one years in gross, without regard to the life or the coming of age of any person soever." Every attempt to tie up the absolute ownership of property except as permitted by these rules is without effect in law.

The provisions of the will in question do not fall without the scope of these rules, and are therefore valid at common law, the law which it is admitted obtains in Pennsylvania, the domicile of the testator at the time of his death. Is the trust so far as the real estate in this state is concerned to be governed by the laws of this state or of Pennsylvania? Under the statute of this state the trust is void. By § 2717 of the Compiled Laws it is

provided that "the absolute power of alienation cannot be suspended by any limitation or condition whatever for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition, except in the single case mentioned in § 2745." This case is not material to the question before the court. Section 2718 declares that "every future interest is void in its creation which by any possibility may suspend the absolute power of alienation for a longer period than is prescribed in this chapter. Such power of alienation is suspended when there are no persons in being by whom an absolute interest in possession can be conveyed." Are there, during the existence of this trust for twenty-one years beyond lives in being at the time of its creation, persons in being by whom a absolute interest in possession can be conveyed? Clearly not. The beneficiaries take no interest or estate in the land. They may merely enforce the performance of the trust in equity. The whole estate is vested in the trustees. § 2804, Comp. Laws. There is no title in any one save the trustees that can be conveyed, and the trustees can make no conveyance in contravention of the trust. Every such conveyance is void. § 2810, id. The trust is indestructible during its continuance, even with the consent of all the trustees and all of the beneficiaries. Douglas v. Cruger, 80 N. Y. 15. Our statutes were taken from that state. In construing the statutes of New York with reference to this point, the court in that case said: "The trustee having no power to convey the land, his conveyance, otherwise absolutely void, could not be rendered valid by an order of the court obtained upon the joint petition of himself and Mrs. Cruger. The supreme court has not the power to destroy a valid trust. The purpose of the statute was to make these trust-estates and trust-interests indestructible and absolutely inalienable during the existence of the trust, and if they could be rendered alienable by the order of the court the whole scheme of the statute would be greatly impaired, and its purpose thwarted." See, also, Cruger v. Jones, 18 Barb. 467; Lent v. Howard, 89 N. Y. 169. It has been repeatedly held under the same statutes in New York that a trust suspends the absolute power of alienation of real estate and the absolute ownership of personal property.

Radley v. Kuhn, 97 N. Y. 26; Everitt v. Everitt, 29 N. Y. 71; Smith v. Edwards, 88 N. Y. 102; Shipman v. Rollins, 98 N. Y. 311; Knox v. Jones, 47 N. Y. 390; De Wolf v. Lawson, (Wis.) 21 N. W. Rep. 615; Simpson v. Cook, 24 Minn. 180-184. It is not merely future estates which are void. Every estate, present or future, which suspends the absolute power of alienation, is void. Hawley v. James, 16 Wend. 61-163; Coster v. Lorillard, 14 Wend. 265-305.

But it is insisted that all the real estate owned by the testator at the time of his death was, by the will, equitably converted into personalty; that, under § 3364 of the Compiled Laws, it is therefore to be deemed personalty from the death of the testator, and that a will of personal property is to be governed as to the validity of the trust it creates, by the law of the testator's domicile, under § 3397 of the Compiled Laws; and that by the laws of that domicile (Pennsylvania) the trust is valid. Section 3364 declares that "when a will directs the conversion of real property into money, such property and all its proceeds must be deemed personal property from the time of the testator's death." Section 3397 provides that the validity and interpretation of a will relating to personal property, is to be governed by the laws of the testator's domicile. These statutes are merely declaratory of long-established rules. It is conceded that the will, if it is a will of real property—is to be governed by the laws of this state, as to the validity of the trust, so far as that trust affects land within the state. Section 3397 expressly declares this rule. If then the will equitably converts into personalty all the testator's real estate within this jurisdiction, it is to be governed by the laws of Pennsylvania. If it is so governed, the trust is valid. The same rule as to perpetuities applies to personal property, as to real estate, in the absence of a statute. The absolute ownership of personal property may, at common law, be suspended for the same period as real estate. Waldo v. Cummings, 45 Ill. 421; 1 Jarm. Wills, 519. Jarman says: "To the test of the rule settled by Cadell v. Palmer, every gift of real or personal estate, by will or otherwise, must be brought." In Waldo v. Cummings the court, after referring to authorities, say: "These authorities leave no doubt that chat-

tels may be devised for a life or lives in being, and twenty-one years afterwards, and in some cases nine months longer, provided at the end of that time the property is required to vest absolutely in some person then in being capable of disposing of the title to the same."

Did the will equitably convert the testator's real estate into personalty? The doctrine of equitable conversion has its origin in the maxim of equity, that that is regarded as done which should be done. It is only an application of that maxim to a certain class of facts. The future duty is the present deed. Duty is the foundation of the doctrine. Equity anticipates the accomplishment of a fact only when and because there is an obligation resting upon some one to create that fact. A direction to sell land, and convert its proceeds into money, imposes a duty. That direction may be expressed in explicit language, or it may be inferred. The duty may arise, also, because a sale and conversion are indispensable to the execution of the testator's scheme. In such a case the main end includes all means necessary to its accomplishment. A direction to sell is implied, because without a sale the will cannot be executed as written. This is the philosophy of the doctrine of equitable conversion; and it is therefore evident that if a sale is not absolutely indispensable, and if any discretion as to the fact of sale is vested in the grantee of the power of sale, no equitable conversion results. The power of sale must be construed as a direction to sell, or there is no conversion. Our statute, therefore, employs the phraseology, "When a will directs the conversion," etc. That statute, as we have said before, is a mere declaration of an established principle; and the framers of it were very happy in choosing the word "direct" to express this principle. Whatever conflicts there may be among the adjudications on this question in the application of the doctrine to different states of facts, that conflict does not affect the doctrine itself. There is no division with respect to it. There is not a liberal doctrine and a strict doctrine. There is only a single ultimate inquiry in each case, is the sale an absolute duty? There is really no conflict among the authorities with respect to the scope of this doctrine. Courts have differed in applying it. So have they differed in their

statement of the doctrine; but it will be found that beneath the superficial disagreement there is harmony. It has been said that some courts hold that, although the testator's design that there should be a sale is not expressed, and although a sale is not necessary, yet if, on a view of all of the provisions of the will, it is apparent that a sale was intended, this is sufficient to constitute an equitable conversion. This statement embodies no modification of the doctrine. It merely declares what indeed is elementary — that the intention of the testator controls. When once it is ascertained from the will that it was his intention that his real estate should be sold, that intention is of as binding force upon the trustees and the courts as though expressed in the form of a direction. The doctrine of equitable conversion does not concern itself ultimately with the language in which the purpose that there should be a sale is couched. Is it the testator's will that there should be a conversion? This is the final and decisive inquiry. Forms of expression are important only as they indicate such a design. A positive direction is satisfactory evidence that a sale is willed. Absolute necessity for a sale to carry into effect the provisions of the testament establishes the purpose of the testator with equal clearness.

But there are other tests than these. The very foundation of the doctrine demonstrates that, however the intention is disclosed, it operates as an equitable conversion; for that must be done which is seen to be the testator's will, however expressed. As it must be done, equity makes present the future, and regards the deed to be performed as an accomplished fact. In no case has the rule been expressed with more felicity and clearness than in Scholle v. Scholle, 113 N. Y. 261-270, 21 N. E. Rep. 84: "To justify such a conversion there must be a positive direction to convert, which, though not expressed, may be implied; but, in the latter case, only when the design and purpose of the testator is unequivocal, and the implication so strong as to leave no substantial doubt. Hobson v. Hale, 95 N. Y. 598. Where, however, only a power of sale is given, without explicit and imperative direction for its exercise, and the intention of the testator in the disposition of his estate can be carried out, although no conversion is adjudged, the land will pass as such, and not be

changed into personalty." This is an accurate and comprehensive statement of the doctrine. The direction may be expressed. It may be implied. It may necessarily result from the other provisions of the will because indispensible to their execution. In the last case the conversion results on the principle that the testator must have intended that everything should be done essential to the execution of his scheme. A review of the authorities will be of little value in the determination of this question, because no two wills present the same features. See, however, Hobson v. Hale, 95 N. Y. 596; White v. Howard, 46 N. Y. 144; Gourley v. Campbell, 66 N. Y. 169; Chamberlain v. Taylor, 105 N. Y. 185, 11 N. E. Rep. 625; Hunt's Appeal, 105 Pa. St. 129; Lindley's Appeal, 102 Pa. St. 235; Cook v. Cook, 20 N. J. Eq. 375; King v. King, 13 R. I. 501; Com. v. Gordon, (Pa.) 7 Atl. Rep. 229.

We will now examine the will to ascertain whether there is a direction to sell by implication, there being no express direction, and a sale not being absolutely essential to the execution of the testator's purposes. After directing the payment of his debts and funeral expenses, and after making certain bequests, and giving his wife the use of certain real property, the testator gives, devises, and bequeaths to three trustees all the remainder of his property and estate, real, personal, and mixed, in trust, to take possession of, and hold, manage, and appropriate the same, and to collect all the rents, issues, profits, income, dividends, and gains thereof, "and to invest and keep invested the same, and every part of the capital thereof, so as to make the same as productive as reasonably may be." He directs the trustees to preserve such investments and securities as he might leave so long as they deem prudent, and to make such new investments as they deem advisable and advantageous to his estate, giving them unlimited discretion to select any investments or securities, except two specified classes of securities, "with full power also, to the said trustees, to change any such investments, whether left by me or made by them, and to convert and reinvest the proceeds, whenever and as often as they, in their judgment and discretion, may think most to the advantage of my estate." The income is to be paid to certain bene-

ficiaries, and when the period for distribution arrives the testator provides for such distribution as follows: "And at such period I direct the division of all the capital of my residuary estate among all my lineal descendants then living, to each an equal share thereof," etc.   That the testator intended that a portion of his real estate should not necessarily be sold is evident from the provisions of his will directing that the rents and royalties from his coal-lands shall be deemed a part of the capital of his estate, thus clearly showing that he contemplated their continuing unchanged subject to the trust.   He also declares that such lands shall not be sold while they produce rents or royalties unless exceptionally full prices shall be obtained therefor, or unless for some reason it becomes unwise for the trustees to retain the lands as part of the estate.   As to these lands, it is evident that an out and out conversion was not only not thought of, but on the contrary was expressly provided against. This fact is important in view of the contention that by using the word "capital" in referring to his residuary estate the testator has employed a word which describes personal property only.   If the word does not, as used by the testator, embrace real estate, then these coal-lands are not included in the residuary estate, and are not therefore subject to the trust, although in express terms subjected to it.   The word "capital" as used necessarily relates to both real and personal property, and that it was the design of the testator to have it refer to both kinds of property is manifest from the fact that he uses it as synonymous with the word "principal."   In several places he speaks of the "capital or principal" of his residuary estate.   This phrase "capital or principal" is used, in the same sense as the word "capital," as appears from the context.   The word means merely the *corpus* of the residuary estate, whether consisting of real or personal property, as contradistinguished from the income thereof.

In the management of the estate by the trustees the testator manifests but a single controlling solicitude.   His scheme is to have the *corpus* of his residuary estate so handled and invested as to produce the greatest income consistent with safety, and he even evinces a willingness to risk somewhat the princi-

pal for the sake of a greater income by enlarging the class of investments which his trustees may make. They may continue his old investments if they will best subserve this controlling purpose. They may make such new investments as will conduce to this main end. Whether the investments shall be in real estate or shall consist of securities is immaterial. It is somewhat significant that the testator directs his trustees to hold his residuary estate, a portion of which consisted of real property, and to collect the rents, issues, and profits thereof; and they are further directed to preserve such investments and securities as he shall leave standing in his name so long as they deem prudent. The word "investments" is doubtless used in its broadest sense, embracing all kinds of property in which his wealth might be invested, either originally or by subsequent change. It is true that when the period for distribution arrives he directs that the capital of his residuary estate shall be divided. But this does not necessarily mean a division of the estate as personal property. "The words 'divide equally' are alike applicable to real and personal property, and may very appropriately be used in reference to both." Hobson v. Hale, 95 N. Y. 596-602. Jarman says that the inference in favor of conversion "is not necessarily to be drawn from a trust to divide into several shares, even though the trustees have an express power of sale." 2 Wills, 177. We are clearly of the opinion that the main scheme of the testator was such investment of the *corpus* of his residuary estate as would result in the largest income, and that the power of sale was merely ancillary to that purpose. The trustees were given power to sell in furtherance of that scheme, and they were vested with a discretion, not only as to the time and terms of sale, but as to the fact of sale itself, in order that this prominent feature of the will might be fully carried into effect. To hold that he had directed a sale of all his real estate, and thus placed the matter beyond the control of the trustees, would conflict with the dominent purpose of the will that any investment, whether consisting of real or personal property, which was more profitable than any other investment that could be made, should stand as to all the property the trustees found in that form when the trust devolved upon them.

What is the master spirit of the testament? That all the land should be sold irrespective of the question of the profit flowing from the investment; or that all land should be held and sold only in furtherance of the leading purpose to subordinate the character of the investments to the question of largest possible profits, consistent with reasonable safety? Clearly the latter.

We cannot better express our conception of the testator's design, so far as this problem is concerned, than by quoting the language in which the counsel for the appellant in his very able and learned brief has stated that purpose: "The greatest amount of profit consistent with safety is the essential idea in the directions relating to investment, and in aid of which the power of sale is given." Certainly the direction by implication to sell, there being no express direction and no absolute necessity for a sale, cannot be said to be sufficiently clear to bring it within the rule which requires the implication to be "so strong as to leave no substantial doubt." Scholle v. Scholle, 113 N. Y. 261-270, 21 N. E. Rep. 84. "No express provision being made in the will for the conversion of the realty into personalty, every intendment is antagonistic to such an intention." Hobson v. Hale, 95 N. Y. 596-605. We therefore hold that the real estate was not equitably converted into personalty; that the trust as to the real property within this state is to be construed by the laws of this state; and that under those laws it is void because it unlawfully suspends the absolute power of alienation. The power of sale was given only for the purpose of the trust. The trust being void the power of sale falls with it. When the grantee of a power has no beneficial interest in the execution of the power it can be exercised only for the very purpose for which it was created. Hetzel v. Barber, 69 N. Y. 13; Benedict v. Webb, 98 N. Y. 460. This last case is peculiarly in point. The court said: "It is conceded that the validity of the title tendered to the defendant pursuant to the contract depends upon the question whether the power of sale contained in the will was a valid authority, and justified the executor in making the contract. This in turn depends upon the validity of the trust created by the will in the executor. If the trust is valid we think there is no substantial objection to the title tendered. If, however, it is invalid

we are of the opinion that the power of sale for the purpose of a division as provided in the will falls with it, and cannot be executed as a separate and independent provision."

But it is further insisted that under the authority to sell conferred upon the trustees' the absolute power of alienation is not suspended at all; that there are always some persons in being by whom an absolute interest in possession can be conveyed. This, in a measure, is true, so far as the particular real estate left by the testator is concerned. But it is not true with respect to the trust property. Whether that property is real or personal, it is not during the trust subject to disposition as property owned absolutely. The power of disposition is limited. It cannot be sold as property free from a trust. The common law contemplates a sale by an owner of both the legal and equitable title, after the prescribed period. The rule forbidding perpetuities relates to personal as well as real property, and certainly the reason for the rule embraces both kinds of property. In this age it is even more important that the sale of personal property, which constitutes the greater portion of our wealth and the chief subject of trade, should be unfettered than that real estate should be subject to free disposition. If a trust of personal property cannot endure for longer than lives in being and twenty-one years and the period of gestation thereafter, is a trust of real estate, which is subject to the same rule, rendered valid by the mere power in the trustee to convert one kind of trust property into another, the property all the time remaining under the trust? If the bare authority to alter the nature of the trust property could save the trust from the condemnation of the doctrine against perpetuities, then a trust of real estate to endure forever could be made valid by a discretionary power in the trustee to change the *corpus* of the trust-estate from real to personal property. The authorities are clear on this point, and they hold that a discretionary power to change the nature of the property will not make real estate subject to a trust susceptible of that alienation, the absolute power of which the common law and the statute against perpetuities declare shall not be suspended beyond a certain period. Brewer v. Brewer, 11 Hun, 147; affirmed in 72 N. Y. 603; Hobson v. Hale, 95 N. Y. 588-609;

Hawley v. James, 5 Paige, 330, 444, 16 Wend. 61, 163; Savage v. Burnham, 17 N. Y. 561-572; Ford v. Ford, (Wis.) 33 N. W. Rep. 188; Palms v. Palms, 36 N. W. Rep. 419-441. Our statute embodies this doctrine. Section 2744 of the Compiled Laws provides that "the suspension of all power to alienate the subject of a trust, other than a power to exchange it for other property to be held upon the same trust, or to sell and invest the proceeds to be held upon the same trust, is a suspension of the power of alienation, within the meaning of § 2717." It follows that the defendants as trustees had no power to sell, and, being unable to give a good title, they are bound under the contract to refund the money paid by plaintiff, and the demurrer should therefore have been overruled. The order and judgment of the district court are reversed, with costs to the appellant, and judgment is directed for the plaintiff upon the demurrer, unless defendant within twenty days from the filing of the *remittitur* in that court withdraws his demurrer, and serves an answer. All concur.