NORTHWESTERN TRUST COMPANY, Petitioner-Respondent, MARY E. KELLY, as Executrix of the Last Will and Testament of Annna B. Murphy, Deceased, Appellant; JAMES MURPHY, John Murphy, Margaret Meehan, Mary P. Barrett, Thomas Meehan, Margaret Meehan, Anna Meehan, Catherine Casper, Christ Meehan, John Murphy, Helen Post, Richard Murphy, Joseph Murphy, Margaret Londo, Mary Londo, John Murphy, Michael Murphy, Richard Murphy, Frank Murphy, Anna Thornton, Mary Coleman and Hannah Murphy, Respondents.

(189 N. W. 497)

**Executors and administrators — order of county court deducting expenses before fixing amount of legacy under will giving legatee one-third of estate, made without abjection, will not be disturbed on appeal.**

A testator by his will first directed the payment of the expenses of last sickness, funeral and just debts; second devised and bequeathed to his wife one-third of his estate; then made certain general bequests in specific amounts, and bequeathed the residue to a class of more remote relatives. A final report, account and petition for distribution was allowed and approved in County Court in which the basis for computing the amount of the provision for the widow was taken as the gross estate less all indebtedness and expenses of administration. The widow objected to the basis for the computation of her one-third being reduced by the expense of administration and claimed interest from the date of the decease. It is *held*:—

1. No objection having been made in the County Court to the deduction from the gross estate of the expenses of the last sickness, funeral and amount required to pay debts, and the testator's intention with respect to these items being in doubt, the decree of the County Court, in so far as these items are concerned, is not disturbed on appeal.

**Wills — husband's will held to entitle wife to one-third of estate without first deducting expenses of administration.**

2. The will is construed and it is *held* to disclose an intention on the part of the testator to fix the amount of the gift to his wife at one-third of the estate, disregarding the expenses of administration.

**Wills — residuary legacy enbraces only what remains after discharge of bequests; general legatee not required to contribute to expenses of decrease tration where contibution would enhance residuary legacy and decrease general legacy.**

3. A residuary legacy, under Section 5720 of the Compiled Laws of 1913, embraces only that which remains after all bequests of the will are discharged; and a general legatee is not required to contribute to the ex-

penses of administration where the contribution would enhance a residuary legacy and decrease a general legacy.

**Conversion — equitable conversion not affected where no duty is imposed upon executor requiring the sale of the real estate.**

4. Where there is no mandatory direction to sell real property and no duty imposed upon the executor requiring sale, no equitable conversion is effected.

**Wills — where provision for wife constituted both a legacy a devise and amount was dependent upon value of estate including expenses, dividends, and accretions, wife was not entitled to interest.**

5. Where a provision is made for the widow which is both a legacy and a devise, and where the amount of the gift is dependent upon the value of the estate, including expenses, dividends and accretions, the widow is not entitled to interest under Section 5732, Comp. Laws 1913.

Opinion filed Jan. 6, 1922.    Opinion on rehearing filed July 12, 1922.

Appeal from the district court court of Grand Forks county, *Cooley, J.*

Modified and remanded with directions.

*H. M. Barstow,* & *McIntyre, Burtness* & *Johnson,* for appellant.

The question, therefore, is: Are the general and residuary legatees to be placed on the same footing as to the taking of their beneficial interests for the purpose of meeting expenses and debts?

To this question, we submit, the answer must be in the negative.

There is no other rule or method directed than that prescribed by § 5722, and it is clear, definite and mandatory.

Dealing with this precise question, the California Supreme Court, in May, 1920, said:

"Section 1516 of the Code of Civil Procedure (8730, C. L.) and § 1358 of the Civil Code of California make the entire estate chargeable with the debts and expenses of administration. * * * In the absence of any other statutory regulation in regard to the payment of debts, it is apparent that all legacies would be reduced in equal proportion. * * * These sections, however, are supplemented and modified by other Code sections. * * * The most specific provision for the order of resort for the payment of debts and expenses of administration is § 1359, Civil Code (5722, C. L.). * * * Held: That a lapsed residuary legacy must be first resorted to as being property not disposed of by the will. Estate of Hall, 59 Cal. Dec. 596 (May 27th, 1920).

"A residuary legacy is only what remains after paying debts, and other classes of legacies, and as it is conditional on something remaining after the paramount claims on the testator's estate are satisfied, it follows that the loss resulting from an insufficiency of assets must fall first on the residuary legatee and he cannot call upon either the general or specific legacies to abate in his favor, even though the entire estate is exhausted so that there is no residue." Cyc., Vol. 40, p. 1902, citing decisions from many states.

In note on p. 1903 we find it stated:

"The priority of general over residuary bequests is not affected by the fact that there is but one general legacy—in such case the general legacy has priority over all others." Farnum v. Bacon, 122 Mass. 282 and 285, and also Estate of Williams, 112 Cal. 521.

The right to interest on a legacy is a mere incident of the principle demand. Kent v. Dunham, 106 Mass. 586, 590.

"The legatee is not entitled to interest if the will provides that same shall not be chargeable." Estate of Brown, 143 Cal. 450.

*Minahan, Minahan, Minahan & Duquaine* and *Murphy & Toner,* for respondents other than the Northwestern Trust Company. *Bangs, Hamilton & Bangs* for Northwestern Co.

"Estate, when used to signify property which a person leaves to be divided at his death, includes indebtedness as well as assets." Stevens v. Underhill, 36 Atl. 370.

"The Supreme Court of California construed the term "estate" in the same manner in Estate of Hinckley, 58 Cal. 457, at 514. The question there was whether bequests to charitable uses in a will exceeded the "one-third of the estate" limitation of such bequests by statute. The lower court had held that bequests to charitable uses might be made to the extent of one-third of the appraised value of all of the property of the deceased. The Supreme Court, however, decided that the bequest to charitable uses could not exceed one-third of the distributable assets, "being one-third of the residue of the estate after payment of the debts, etc."

"The gift to the widow does not bear interest."

"The will makes no provision for the payment of interest upon the gift to the widow. The claim that the widow is entitled to interest is based upon § 5732 C. L., which provides:

"A. Legacies bear interest from the time when they are due and

payable, except that legacies for maintenance or to the testator's widow bear interest from the testator's decease."

B. But the gift to the widow is not a "legacy" and hence the statute has no application."·

"A legacy, of course, is a gift of personal estate by will. The word 'devise' is usually employed to denote a gift, by will, of real estate, or any interest therein." Evans v. Brice, 8 N. E. 854, 857, 118 Ill. 543.

"A legacy is a testamentary disposition of personal property and a legatee is a person to whom the bequest is made." Nye v. Grand Lodge, etc., 9 Ind. App. 131, N. E. 429, at 436.

"A legacy is a bequest of goods and chattels by will or testament." Probate Court v. Matthews, 6 Vt. 269, 275.

"A legacy is a gift or bequest of personal property. It includes any gift of personal property by will, as well as those made in lieu of dower as those which are gratuitous." Orton v. Orton, (N. Y.) 3 Abb. Dec. 411, 414 (cited in 5 W. & Ph. 4055).

"The word 'legacy' as it is usually understood and in its legal import, belongs especially to a gift of personality." Browne v. Cogewell, 87 Mass. 556, 557.

" 'Legacy,' in its technical sense, means a testamentary disposition of personality, and is ·not accurately applied to a testamentary disposition of land." In re Fetrow's Estate, 58 Pa. 424, 427. (cited in 5 W. & Ph. 4056).

"A legacy is defined by Webster to be 'a gift by will of personal property' and this definition is substantially the same as that given by Black and Bouvier in their law dictionaries." Harding's Administrator v. Harding, 132 Ky. 133, 116 S. W. 305, 307.

"While the word 'devise' is the appropriate term to pass title to real estate, and 'bequeath' a term applicable to gifts of personal property, a strict adherence to technical words is not necessary to. give effect to a testator's intent, and the fact that the word 'devise' is not used does not prevent the title to real estate passing by use of the word 'bequeath.' Mills v. Tompkins, 97 N. Y. Supp. 9, 10; 110 App. Div. 212 (cited in 3 W. & Ph., 2nd Series, 63.)

In re Campbell's Estate, 27 Utah, 361; 75 Pac. 851.

"Strictly speaking, the term 'legacy' refers to personal property, but it may be, and often is, used in a more extended sense by persons unacquainted with the precise meaning of legal terms, and when so used,

may embrace real estate." Russell v. Elden, 15 Maine, 193; 196 (cited in 3 W. & Ph., 2nd Series, p. 63).

BIRDZELL, J. This is an appeal from a judgment of the district court of Grand Forks county, affirming an order of the county court, which overruled certain objections to a final account, and approved the report of the executor.

Richard H. Murphy died testate November 6, 1913. His will, which was duly probated, is as follows:

"I, Richard H. Murphy, being of sound and disposing mind and memory, but conscious of the uncertainty of life, do hereby make, publish and declare this my last Will and Testament hereby revoking all former wills at any time made by me.

"First, I direct the payment of the expenses of my last sickness and funeral, and any just debts that I may leave owing.

"Second, I give, devise and bequeath to my wife Annie R. Murphy one-third of my estate, both real and personal.

"Third, I direct my executor hereinafter named to erect a monument on my grave at a cost approximating ten thousand dollars ($10,-000.00).

"Fourth, I give, devise and bequeath to my brother James Murphy residing near Waseca, Wisconsin, and to my brother John Murphy, residing near Waseca, Wisconsin, each the sum of five thousand dollars ($5,000.00); and to my sister, Margaret Mehan, Manitowac County, Wisconsin, to my crippled nephew whose name I think is Richard, son of my sister Margaret Mehan, residing with his mother, and to my niece Hannah Murphy, daughter of my brother James Murphy, each the sum of ten thousand dollars ($10,000).

"Fifth, the rest and residue of my estate I give, devise and bequeath to the Northwestern Trust Company of Grand Forks, North Dakota, as trustee, however, in trust, for the equal use and benefit of my nephews and nieces other than my nephew Richard and my niece Hannah hereinbefore provided for, to hold, manage, invest and reinvest the same and to pay over the income arising therefrom in equal shares to my said nephews and nieces until they shall respectively reach the age of twenty-five years, at which time a pro rata share of the principal of said trust estate as then invested shall be paid and transferred to the person reaching such age.

"Sixth, I hereby make, nominate and appoint the Northwestern Trust Company, of Grand Forks, North Dakota, executor of this will and trustee of the trusts herein created, hereby giving to said Northwestern Trust Company, in whichever capacity it may be acting, power to sell, transfer, convey and assign any and all real estate when in its judgment it shall be for the best interests of the parties interested in this will, and to invest and reinvest the trust estate hereinbefore devised and bequeathed to it. Provided, however, that the stock in the Farmers' National Bank of La Moure, North Dakota, held by me at the time of my death, shall be held intact for a period of ten years and not sold in whole or in part during such period."

The will was admitted to probate in January, 1914, and soon thereafter an inventory of the estate was filed, in which the real property was appraised at $15,000 and the personalty at $135,276.88; total, $150,276.88. A final report and account was duly presented for approval covering the receipts and disbursements of the executor from January 3, 1914, to May 12, 1919, and in November, 1919, an amended final account was presented making some slight changes in the original account, which were made necessary by a subsequent transaction. The amended report shows receipts aggregating $180,082.11 and disbursements as follows: Administration expenses, $10,302.85; taxes and insurance, $834.04; expenses of last sickness and funeral, $1,646; widow's allowance, $5,250; debts and claims, $13,768.51; total, $31,801.40. Partial distribution to Annie B. Murphy, $46,800; payment in full to all legatees whose legacies are provided for in definite amounts, $40,000; expenditure for monument (directed by will,) $9,473.43; partial distribution to residuary legatees, $40,000; leaving a balance of cash on hand, $11,932.20.

The county court arrived at the amount of the legacy of Annie B. Murphy by subtracting from the total receipts the total of the debts, taxes and insurance, expenses of last sickness, widow's allowance, and expenses of administration, and dividing the remainder by three. The amount of distributable estate by this calculation was $148,280.71, and the legacy of the widow, $49,426.90. Objections and exceptions to the final account and petition for distribution were filed by the widow, in which it was claimed that the basis for computing her share was the total estate, as shown by the final account, less the expenses of last illness, and funeral, and the total debts and claims (minus a bank stock assessment of $750, which it is claimed was not properly allowed as a debt), or $164,917.60, and specific objection was made to reducing this basis by the further sub-

traction of expenses of administration, taxes and insurance, the widow's allowance, amounting in all to $17,060.39. It is further objected that the account does not include interest on the widow's legacy. To quote the exceptions:

"First. This respondent assigns these deductions (expenses of administration) as errors, and claims that by the law itself she is made a preferred legatee, is entitled to one-third of the estate after deducting the expenses of last illness, funeral and amount of all debts and claims paid. * * * Second. Such final account does not include interest upon the legacy so given to this respondent. * * *"

Notwithstanding that no exception was taken to that part of the account which deducted expenses of last illness and total debts and claims paid from the gross estate before computing the widow's share, and that the objector, in fact, submitted as a basis for computing such share the gross estate less these same expenses and debts, it is now asserted in this court that the gross estate is the proper basis for computation.

The controversy in this case, as will be seen from the foregoing statement, arises over the question of the basis upon which to compute the widow's legacy. Is she entitled to one-third of the gross estate; to one-third of the estate after subtracting the expenses of the last sickness, funeral, and debts, or is she entitled to one-third of the net or distributable estate; that is, one-third of what is left after the payment of all debts and expenses of administration? In addition, a minor question is presented as to whether or not interest should be allowed upon the legacy.

In view of the fact that no issue was presented in the county court concerning the debts generally, that the counsel for the objecting legatee and appellant expressly recognized the propriety of deducting expenses of last sickness, funeral, and debts from the gross estate and leaving the remainder as the basis upon which to compute the legacy of one-third, and in view of the doubt as to the intention of the testator upon this subject this court will refrain from deciding whether or not the gross estate is subject to this deduction before determining the amount of the widow's legacy. In this respect the decree of the county court as made with the tacit approval and acquiescence of the appellant will remain undisturbed.

The questions presented here are not so much questions of law as of fact. The solution seems to us to depend altogether upon the intention of the testator, and intention is a question of fact to be determined by the court from the will. The statutes provide for giving full effect to

this intention when ascertained.   None of the various Code sections cited by counsel professes to more than lay down rules for carrying out the testamentary intention, either expressed or implied.   For the most part, they are mere aids to construction.   Pomeroy on Equity Jurisprudence, vol. 3, § 1135.   We are of the opinion that all questions presented finally resolve to the one query: How much did the testator intend his wife to receive?   What amount was intended when he provided that she should receive one-third of his "estate, real and personal?"   Did he intend that she should receive one-third of the gross estate?   She herself has otherwise construed the will, and we will not reverse this construction.   Perhaps it was a correct interpretation.   See Briggs et al. v. Hosford, 22 Pick. (39 Mass.) 288; Terry v. Smith, 42 N. J. Eq. 504, 8 Atl. 886, reversed Smith v. Terry, 43 N. J. Eq. 659, 12 Atl. 204.   Then did he intend that the amount of her legacy should be affected by the costs of administration?   If a portion of the estate had been left undisposed of so as to go to the heirs, it would seem that the amount of the legacy would not have been affected by the expenses of administration.   In re Purdy's Estate, In re Tompkins, 9 Misc. Rep. 436, 30 N. Y. Supp. 382; Estate of Traver, 145 Cal. 508, 78 Pac. 1058.   It seems to us that the will, in fact, affords ample affirmative indication that the amount of the wife's legacy was not to be affected by the expenses of administration to any greater extent than the other general legacies.   It will be observed that the testator provided for his wife before making provision for any other legatee, thus evidencing an intention to deal with her at least as favorably as with any other class.   He also provided for a class of residuary legatees.   If it be held that the expenses of administration are to be subtracted before the basis is arrived at for determining the widow's one-third, as was done below, it would be equivalent to holding, in the circumstances of this estate, that the widow was, to all intents and purposes, a residuary legatee.   This conflicts with the expressed intention, for a group of residuary legatees is named excluding her from the class.   It was clearly not intended that she should be so considered.

We think, where the actual intention is doubtful, that that construction of a will should be adopted which tends to fix or make certain the amount of all legacies above the class of residuary legacies, rather than one which tends to aggravate the uncertainty by rendering the amount contingent upon indefinite quantities which do not appear to have been present in the mind of the testator, or, if present, to have been intended to have any peculiar effect on one of a naturally favored class.   Furthermore, com-

petition and conflict between residuary legatees and general legatees should be avoided, if possible. We are of the opinion that the testator intended to give to his wife at least one-third of the property he would leave after payment of the obligations he had in mind when he made the first direction in the will.

Since the amount of the legacy becomes fixed as above indicated, we are not concerned with § 5722 of the Compiled Laws, upon which so much argument is expended in an effort to determine its application or nonapplication to the case in hand. Any remaining conflict between the widow and the residuary legatees concerning expenses is resolved by § 5720, which defines a residuary legacy by stating what is included within it. It is "only that which remains after all the bequests of the will are discharged." Manifestly the bequest to the wife will not be discharged if a portion of the amount intended for her is taken to pay expenses. It follows that the legacy of the widow must be computed without taking into consideration the expenses of administration.

Is the widow entitled to interest on her legacy? The claim to interest is based upon § 5732, C. L. 1913, which provides that legacies bear interest from the time they are due and payable, except that legacies for maintenance or for the testator's widow bear interest from the testator's decease. As a matter of strict legal definition, the provision for the widow in the will in question is both a legacy and a devise, as it was at all times within the range of legal possibility for the executor to fully discharge the provision by a payment partly in money and by allowing her to succeed to her interest in the realty through the nonexercise of the power of sale. There was no mandatory direction or duty imposed to sell the real property; hence, no equitable conversion was effected. Penfield v. Tower, 1 N. D. 216, 46 N. W. 413. 3 Pomeroy's Eq. Juris. § 1160. In view of the peculiarity of the provision made, we are of the opinion that it does not fall within the character of legacy upon which the statute requires interest to be paid from the date of the decease. Neither do we think it within the contemplation of the statute that the widow, in circumstances such as presented in the instant case, should be entitled to participate in the increment to the estate while in the hands of the executor and be allowed interest upon a share which is computed upon a basis that includes the increment. This process would be analogous to compounding interest.

The judgment appealed from is modified, and the district court is directed to enter a judgment directing the county court to proceed with

the final accounting and distribution in a manner not inconsistent with this opinion.

CURISTIANSON, J., concurs.

GRACE, C. J., concurs in the result.

BRONSON, J. (dissenting). I am of the opinion that the judgment of the district court should be affirmed. Two courts, the district court and the county court, apparently with painstaking care and attention, have arrived at an interpretation of the will of the decedent consonant with the judgment rendered. The widow, the appellant herein, filed in the county court objections and exceptions to the final account and petition for distribution. In such objections she stated that the total estate account showed the sum of $179,582.11. (This amount included the proceeds realized upon the conversion of the realty and personalty into cash, the interest, and the earnings thereof, all during the course of administration). She asserted that, after deducting the last illness and funeral expenses and the total debts and claims, amounting to $14,664.51, there remained, as a basis for the computation of the widow's share, $164,917.60. She objected to the deduction of the expenses of administration, of the Sawyer bank assessment, of taxes and insurance, and of the widow's allowance, amounting to $17,060.39. She claimed "that by the will itself she is made a preferred legatee" and "is entitled to one-third of the estate after deducting the expenses of last illness, funeral, and amount of all debts and claims paid." She also claimed that she was entitled to interest at the rate of 7 per cent. per annum from the date of decedent's death upon her testamentary interest, until paid, less interest on accounts paid from time to time to her upon partial distribution.

Hon. L. K. Hassell, judge of the county court, in an extensive and able memorandum opinion, found, pursuant to amended reports, that the total estate amounted to $180,082.11, and the total disbursements for sickness and funeral expenses, debts, widow's allowance, and expenses of administration, amounted to $31,801.40, leaving a balance of $148,280.71, distributable estate. In considering the objections of the widow, he quoted §§ 8730 to 8733, C. L. 1913, which provide that all the property of the decedent, with certain exceptions as to homestead, etc., shall be

chargeable with the payment of his debts, the expenses of administration, and the allowance to the family. That the estate real and personal, given by will to legatees or devisees, is liable for the debts, expenses of administration, and allowance to the family, in proportion to the value or amount of the several devises, but special devises or legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator and there is other sufficient estate. He found that there was nothing to indicate that the legacy to the widow was a specific legacy; that the statutes quoted applied, and the act of the executor in subjecting the widow's interest to its proportionate share of the expenses of administration was in accordance with the law. Concerning the allowance of interest, he found that § 5732, C. L. 1913, did not apply; that the legacy to the widow was not a pecuniary legacy; that it was one-third of the estate, that is, one-third of the distributable estate; that it was impossible for the executor to determine what one-third of the estate would be until the expenses were all paid; that, during the six years since the death of the testator, one item alone amounted to over $15,000, as interest accrued since the death of the testator; that, approximately, $15,000 concerns the proceeds received from the real estate, of which a substantial sum consists of the proceeds of crops upon lands; that these items are included in arriving at the net distributable estate; that, if interest should be allowed, it would be necessary to compute the distributable estate at the time of the testator's death and not at the time of distribution. Accordingly, he approved the report of the executor, thus allowing the widow one-third of $148,280.71. From such order of approval the widow appealed to the district court.

The parties stipulated the facts. They stipulated that $12,297.51, as items of interest and dividends, had been collected and reported since testator's death and prior to entry of judgment in county court; that such other items—as may accrue shall be reported in a supplemental final accounting; that the appeal in the district court should be heard without oral argument and upon written briefs. Upon consideration of the appeal and the stipulation, Hon. Charles M. Cooley, district judge, affirmed in all things the action of the county court, and judgment was entered accordingly. This judgment determined the distributable assets to be $148,280.71; one-third thereof to be $49,426.90; advances made to the widow to be $46,800—leaving the balance due her, $2,626.90.

It is difficult to understand the contentions of the widow, upon this appeal, with reference to the exact amount that should be awarded to

her. In appellant's opening brief, it is stated that the official inventory and appraisement showed an estate of $150,276.88, one-third of which would be $50,093.29, as a basis for interest; that, in addition to this, a fair allowance could easily be made on increased values (over appraised amounts) when obtained, and upon values realized though not inventoried; per contra, any loss or deficiency as compared with the appraised value would be deductible from accretions in excess thereof. In a short brief, filed subsequent to the oral argument before this court, the widow made a calculation of the award due her as follows: Gross estate, $180,-$82.11. Funeral, last sickness, and death, $11,872.35. (This latter amount was apparently ascertained, viz.: Administration expenses prior to amended report, $10,226.35. Last sickness and funeral expenses, $1,-646. Total, $11,872.35). Balance, $168,209.76. One-third of this amount, $56,069.92. Widow entitled to interest on above, less $15,-889.51, being the interest received by the estate during course of administration. That the trial court erroneously deducted following items before calculating widow's one-third: Amount paid creditors, $13,768.51. Allowance to widow, $5,250. Total, $19,018.51. That judgment should in any event be modified and executor directed to pay one-third of above amount, or $6,339.50, to widow. In other words, the widow, although in ascertaining her share she made no objection in the county court to the deduction of the total debts and claims, and such was her status before the district court, because she filed no further objections, pursuant to the stipulation made, yet now she asserts that the trial court and the county court erroneously deducted the amount paid to creditors upon such debts and claims. Further, she, pursuant to the calculation made, now deducts the expenses of administration (those prior to the amended report), although previously she complained in the district court and county court of its action in so doing.

Accordingly, upon the record, the objections made by the widow in the county court, the stipulation concerning the appeal in the district court, and the briefs of the widow before this court, it appears that the widow did not object, in the county court or the district court, to the deduction of funeral and last illness expenses and total debts and claims in the computation of her share. Not so objecting, consent, and waiver of objection, follow. In this court pursuant to her calculation, she again consents to the deduction of funeral and last illness expenses, and, for the first time, consents to the deduction of administration expenses, and, for the first time, objects to deduction of total debts and claims. Ac-

cordingly, the only consistent objection that is made throughout is the objection to the deduction of the allowance made to her, viz. $5,250, the allowance to her during the course of administration.    Thus, upon such record, upon such objections and nonobjections, and upon such contentions, this court is asked to interpret anew the will concerning the widow's share and to award to the widow one-third of the testator's property together with interest thereupon, free from any deductions for last illness and funeral expenses, debts and claims, allowances to widow, or expenses of administration.    Assuredly, if the rule still obtains, the widow is bound by her exceptions and objections made in the courts below.    The majority opinion of this court so recognizes in its disposition of this case. The question of interest is also determined adverse to the widow's contention.    If the calculation made by the widow that now expenses of administration be deducted, be recognized, her contentions in that respect upheld, there remains for consideration only the propriety of deducting the widow's allowance in the computation of the widow's share.    Perhaps, inadvertently, the widow had misstated her calculations and contentions.    Even so, there remains for consideration and review, only, the action of the court below in deducting the total claims and debts and expenses of administration, including the widow's allowance.

Disregarding, however, the concessions or admissions  made in the courts below, the appellant contends, in effect, for a principle of construction concerning the word "estate," namely, that the phrase "one-third of my estate," as used in the will, means, and was intended to mean, one-third of all the property left by the deceased. · I am of the opinion that one of two possible constructions must necessarily obtain in the interpretation of the provisions of the will concerned: Either, the phrase "one-third of my estate," as used in the will, means one-third of all the property left by the decedent, or one-third of the distributable assets of the estate of the decedent.    I am further of the opinion that the majority opinion errs in the construction placed upon the term "estate," as used in the legacy to the widow, and in the application of the statutory law applicable thereto.    Further, that the resultant construction, so placed by the majority opinion, cannot be sustained either upon principle or as consonant with the intention of the testator.    The word "estate" of course, has a peculiar meaning as used in a will.    Manifestly, it is not the same as the word "estate" when used in connection with real property, such as, to speak of an estate in realty.    It must be remembered that the legacy or devise, however termed, to the widow, is not a specific legacy or

devise. It is not a gift of a specific thing or things, such as a horse, specific chattels, specific amount of money, or specific realty. The legacy or devise is general. Is the word "estate," as used, synonmous with the word "property?" Even so conceding, what is property? Is it the specific thing, if it be dollars, a horse, certain furniture, or specific realty, such as 160 acres of land, or is it, rather, the right to use, enjoy, and dispose of things capable of being owned? Is not much confusion in legal terminology and definition occasioned by considering too much the term "property" in the objective sense, as specifying the thing or things possessed of, tangible, concrete things, whether several or in the aggregate? As a general term, and in legal parlance, does it not signify and comprehend the right rather than the thing itself? For instance, labor may be property. Thus, choses in action and other intangible things. See §§ 5245—5253, C. L. 1913, on the nature of property; Fleming v. Sherwood, 24 N. D. 144, 149, 139 N. W. 101, 43 L. R. A. (N. S.) 945; Rigney v. Chicago, 102 Ill. 64; State v. Kreutzberg, 11 4Wis. 530, 90 N. W. 1098, 1100, 58 L. R. A. 748, 91 Am. St. Rep. 934; 32 Cyc. 648; 22 R. C. L. p. 37.

For the purposes of illustration, supposing the testator had given to his wife, inter vivos, by bill of sale or deed, or by both, one-third of his estate both real and personal in precisely the same language as has been used in the will. Supposing that his estate consisted of realty with mortgage of $5,000 thereon and personalty with a mortgage of $5,0000 thereon. If the word "estate" means property what would be the wife's share, in property? In computing the property, or its amount, would it be free from, or subject to, deduction of the liens? What was, in such case, the property interest of the giver? The whole amount of the value of the specific things, or the value thereof less the liens? In such case, in our opinion, the value of his property is determined by deducting the liens. To these suppositions, the answer may not be made that if the giver had given one-third of his property, specifically describing, it the wife would not be subject to the debts of the giver in computing the value of the property interest, for, in such case, the gift would be specific, and the term "property" would then have specific reference to specific things. Supposing, further, in determining the meaning of the word "property," as a general item, the testator in this case possessed a homestead of the value of $5,000; would she claim that the property interest of the deceased's estate was all his specific property plus the homestead? That one-third of such amount comprehended her share? Yet the prop-

erty interest of the deceased's estate, by law, was not the entire homestead, for such he could not thus devise, but the right in, or the value of, the remainder subject to the life estate of the widow therein, as her property. Manifestly, she could not claim both that the deceased's estate possessed a property interest in such life estate, of which she was entitled to one-third, and that such property interest therein was owned by her entirely during her lifetime pursuant to the statute is provided. The estate of a decedent, testate or intestate, may represent a different property interest than the estate (if the term be so used) of such decedent immediately prior to his death. Then (at the time of death) all of his estate becomes subject to control by the county court, and chargeable with expenses of administration, allowance to the family, and claims of creditors, excepting the homestead and exempt personal property. Sections 8730—8733, C. L. 1913; § 5721, C. L. 1913.

The status of the decedent's estate is peculiar. The property interest of the decedent's estate is not the same as it was while the decedent was alive. The growth of the law concerning the property interest of decedents reveals the peculiar status. In the early history of the law, the realty of the intestate decedent descended to his heirs free from control by the representative of his estate. The estate of the decedent (so using the term) retained neither property interest nor right in such realty. 18 C. J. 881. It was not assets of the estate. Underhill, Wills, vol. 1, p. 512. Now, the estate of a decedent possesses a right, a property right, in the deceased's realty. The representative has right of possession, right of control, right of action, rights of sale, concerning the same. Sections 8707, 8767—8779, C. L. 1913; Honsinger v. Stewart, 34 N. D. 513, 159 N. W. 12; Magoffin v. Watros (N. D.) 178 N. W. 134, 136. So, in the early history of the law, personalty of an intestate vested in the administrator. Now, it passes to the heirs, the same as realty subject to control of the county court and the administration. Section 5742, C. L. 1913. Thus there is now a recognition of rights, property rights and interests, in the "estate" of a deceased. Again, the land of a testate decedent, formerly, passed to the devisee, through the will operating as a conveyance. 40 Cyc. 1095. It·was not assets of the estate. Now, such land devised passes subject to an "estate" property right and control, the same as land of an intestate decedent. Section 5640, C. L. 1913. Formerly, personal property specifically bequeathed passed to the legatee; personal property not specifically bequeathed to the executor, 40 Cyc. 1996. In the latter instance, administration was necessary to per-

fect the right or title of the legatee. 40 Cyc. 1997. Now, personal property bequeathed passes to the "estate of the decedent" the same as other realty or personalty. Thus, it may be seen that now the "property" of an "estate of a decedent," whether testate or intestate, consists of that property which the law states shall pass to the "testate" or over which it exercises a control, right, or property interest.

This "property" interest of the "estate," what is it? How may it be computed? How ascertained? Manifestly it does not include the life estate of the widow, or her right in the absolute exempt personal property. What is the amount or the value of this "property" interest of the "estate?" Is it the aggregate value, or the amount, of the specific things, realty or personalty, that have passed to the "estate," either in a general or limited way. The aggregate value or amount of such things, over which the "estate has control or possession or a limited interest therein for certain purposes? Or, is this "property" interest of the "estate" the aggregate value or amount of such things, or of the limited or qualified interest therein, subject to, or freed from, the liens which the statute has created thereon, to wit, homestead rights, absolute exemptions, family allowances, expenses of administration, and claims of creditors. We are of the opinion that the latter is the only proper interpretation that may be given to the ascertainment of the "property" interest of an "estate of a decedent" where the term "property" is used as a general term and its legal sense. Briggs v. Hosford, 22 Pick. (39 Mass.) 288, 289. Consideration may now be given to the term "estate" as used in the will. It apparently does not embrace all of the property of the deceased. It would not embrace the homestead, in toto, of the decedent. But it appears that he had no homestead. It would not embrace the absolute exempt personal property. No absolute exempt personal property has been listed. Manifestly, the decedent possessed some at his death. At least, personal clothes. Assuredly, the intention of the testator is to be carried out if is possible to do so. It is to be carried out in accordance with the language that he has used and the evident intent and purpose of such language. What was this estate? It has been shown that it is not the same as property interest of the decedent at the time immediately prior to his death. Is an estate of a decedent composed of assets alone? May not and are not liabilities also comprehended within the term "estate?" In determining the value or the amount of an estate, are the assets alone to be computed?

It appears evident that the "estate" of the decedent is not the equi-

valent, in amount or value, of the property, in amount or value, possessed by the decedent at the moment of time preceding his death. One-third of his "estate" is not the same or the equivalent of one-third of his property then possessed before his death. Smith v. Terry, 43 N. J. Eq. 659, 666, 12 Atl. 204. Furthermore, the whole context of the will, its various bequests or legacies, the property disclosed, and concerning which the testator must have directed his attention, evince an intention that contradicts the construction asserted by the appellant widow. The parties themselves, the widow, the devisees and legatees, the executor, all have disclosed a contrary construction in their actions during the course of administration and in the proceedings of two trial courts. If the testator intended to give to his wife one-third of all his property possessed by him at the moment before his death (not one-third of his estate), why did he give to his executor a specific power over all of his real estate and specific directions to hold certain personalty (bank stock) for a period of ten years? If the wife was entitled to one-third of his property, so possessed by him before his death, to pass to her upon his death, one-third of his realty, one-third of his bank stock, one-third of his notes, etc., why did he give specifically to another the power and the right to possess, sell, and control this property for a period of time which has now exceeded six years? The power and the right to enhance or depreciate such property, or the returns thereupon, and during a period of time when the amount or value of the wife's property and interest therein was and has been determined (as the widow contends) since the death of the testator? Again, what does the term "estate," as used in the will, mean? In any event, the general intent of the testator, as gathered from the whole will, is not to be defeated by language of a single clause, even if doubtful or uncertain. Stevens v. Underhill, 67 N. H. 68, 36 Atl. 371. In this case, the court said:

"For 'estate,' when used to signify property which a person leaves to be divided at his death, includes indebtedness as well as assets."

See Johnson v. Miller, 33 Miss. 553, 557.

The question of construction herein involved is answered by a case in California. Our Probate Code and the provisions particularly involved are largely borrowed from California. In that case, Estate of Hinckley, 58 Cal. 457, the court says:

"Suppose a testator declares in his will, 'I give one-third of my estate to my son, A,' can there be any doubt that the word 'estate' would be held to mean distributable assets?"

In that case the question arose:

"Do the words 'one-third of the estate' as used in § 1313 of the Civil Code, * * * mean one-third of the gross estate of the testator, or one-third of the 'distributable assets.' "

Among other things, the court said:

"The word estate is indeed nomen generalissimum. Originally perhaps it was used to designate the interest which one had in land; then to indicate the land itself—technically the corpus; it was afterwards extended to all property real and personal (Burr. L. D. 'Estate'). In wills the import of the term depends in a great degree upon its association with other expressions. * * * As said by Mr. Abbott: 'Estate is used in several variant senses. Only the context, or the circumstances under which it is employed can guide one in assigning to it the meaning intended.' * * * The same writer adds: 'In a very common use estate signifies the entire condition in respect to property of an individual; as in speaking of a bankrupt, decedent, or insolvent estate, or of administering upon an estate. Here not only property but indebtedness is part of the idea. The estate does not consist of the assets only; if it did, such expressions as insolvent estates would be misnomers.' * * * It is indeed true that the word 'estate' is used at times in the Code of Civil Procedure as signifying all the decedent's property. (Section 1645 (practically same as 8758, N. D. C. L. 1913). * * * Elsewhere too in the same Code we find the expressions 'the residue of the estate,' 'the residue of any estate.' (Code Civ. Proc. 1665, 1668 (§ 1665 same as § 8846, N. D. C. L. 1913). But too much stress ought not to be placed upon these applications of a term, which in the Codes themselves is employed in different senses. Thus: 'The executor is to deliver to the heir, legatee, or devisee, the whole portion of the estate to which he may be entitled,' i. e., a portion of the distributable assets. (Code Civ. Proc. 1661 (§ 1661 same as § 8844, N. D. C. L. 1913). 'Before any distribution of an estate is made,' etc. (Id. 1669 (practically same as § 8848, N. D. C. L. 1913). 'When any estate is assigned.' (1691 (practically same as § 8867, N. D. C. L. 1913). 'The court must direct * * * the distribution of an estate.' (1651.) 'An order for the distribution of the estate.' (1650.) 'In the decree assigning and distributing the estate.' (1686 (same as § 8850, N. D. C. L. 1913). In the sections last cited the word estate is clearly used as the equivalent of distributable assets.' The generalization of counsel for appellant would seem to be correct: Where the Code of Civil Procedure speaks of claims of creditors, settlement of the

estate, sales of property, and partnership interests, it refers to the whole estate of the decedent; but where it speaks of the distribution of an estate, and of persons entitled to such distribution, and their proportionate interests, it refers to the disposable assets only. When it speaks of an insolvent estate, the word includes, in idea, the indebtedness as well as the property. In deciding in what sense the term is used in § 1313 of the Civil Code, therefore, the very slightest, if any, weight should be given to the fact that it sometimes signifies the estate in gross. The first section of the first chapter of the title Civil Code (§ 1270) which treats of wills —the chapter which includes § 1313—reads as follows: 'Every person over the age of eighteen years, of sound mind, may, by last will, dispose of all his estate, real and personal, and such estate not disposed of by will is succeeded to as provided in the title VII of this part, being chargeable in both cases with the payment of all the decedent's debts, as provided in the Code of Civil Procedure.' (Section 1270 is same as § 5640, N. D. C. L. 1913.) True, a specific bequest is payable first out of the residuum, but in such case the residuum is previously ascertained by providing for the debts. A devise or bequest of an aliquot part of an estate would give right only to the portion of the residuary estate. 'Suppose a testator declares in his will, "I give one-third of my estate to my son A," can there be any doubt that the word estate would be held to mean distributable assets?' " 58 Cal. 514. See in re McLennan's Estate, 179 Mich. 595, 603, 146 N. W. 265.

In Abila v. Burnett, 33 Cal. 658, the testator in the third subdivision of his will stated, "My said wife shall receive one-half of all my property of which I may die seized," etc., 33 Cal. 661. The inventory showed that the testator died seized of certain real and personal property, of the value of $5,595.25, per appraisement. One-half of this amount was authorized by the court to be transferred to the widow, who was also one of the executors. Another one of the executors made application to the probate court for an order authorizing the sale of realty of the estate for the purpose of satisfying a claim in his favor for services and expenses as executor. As a result of proceedings in the courts contesting the will, costs amounting to over $3,900 had been incurred. Burnett, one of the parties interested, objected to the allowance of the petition, upon the ground among others, that the distribution to the widow of half of all the property was unauthorized and was subject to the payment of expenses of administration; that the executor, having aided in such appropriation, should be charged in his account with the value of the

personalty so appropriated. The probate court allowed the petition. Burnett appealed. The Supreme Court stated, concerning the nature of the devise to the widow, viz.:

"There is nothing, however, in the will in the nature of a specific devise. * * * Under the will she took all she took subject to administration, that is to say, one-half of what might remain after the payment of debts and expenses of administration. It follows that the court erred in considering the personal property delivered to the widow—being one-half of the cattle belonging to the testator at the time of his death—as no longer constituting a part of the estate. They are a part of the estate, and must be sold before a resort to the land can be had, and must therefore be taken into account in determining the necessity for any sale of the latter."

In Estate of Traver, 145 Cal. 508, 78 Pac. 1058, it is to be noted that the will provided, so far as material, viz.:

" 'At the death of my wife, it is my will that one-half of the property hereby given, devised and bequeathed to my wife during her lifetime, shall descend and go to L—— D. N.——, C—— T. N——. and R—— D——, in equal proportions.' * * * 'If my wife dies before I do, in that event I give, devise and bequeath one-half of the whole of my property to L. D. N——, C. T. N—— and R. D.——," etc.

All of the property was community property. He devised or bequeathed one-half of it, that over which he had testamentary capacity. The above were the only provisions of the will disposing of his estate. The testator's wife died before he did. The effect was to vest the entire community property in him. Accordingly, he died intestate as to the other half of the property. In the course of administration the debts and expenses of administration were charged to the intestate property. The heirs complained. The Supreme Court affirmed the method adopted upon the ground that the statute made the intestate property subject to appropriation. It is to be observed that the will bequeathed one-half of the whole of my property: It did not state "one-half of my estate." As hereinbefore discussed, one-half of the whole of my property, while the testator is alive, is not the equivalent of one-half of my estate, when the testator is dead. To point out the distinction for purposes of illustration, one general rule may be stated, viz.: "Where the terms of donation are general, and the testator has not the absolute and exclusive ownership, but his interest is qualified, partial, or undivided in the property, and he uses general words of disposition, as 'all my estate,' 'all my

land,' etc., prima facie the rule is that he must be taken to intend to dispose only of what he had the power to dispose of" otherwise stated, "The presumption that, by the use of general words of donation, he intends strictly to dispose only of what is capable of being disposed of, may be rebutted by the character and terms of the will and it is therefore a fair question of construction in what sense the words 'estate' or 'lands' or "property" are used by the testator, whether it is limited to the partial or undived interest which, in contemplation of law, will be subject to be disposed of under the will after his decease, or is intended to include the entire property owned, possessed, and enjoyed by him in his lifetime," In re Gotzian, 34 Minn. 159, 164, 165, 24 N. W. 920, 922 (57 Am. Rep. 43).

Accordingly, the phrase, one-third of my estate, in the legacy to the widow either means one-third of all of the property owned by the testator at the time of his death and during his lifetime, or, one-third of the distributable assets of his estate. The latter construction has been adopted by both the county court and the district court in its respective decisions in this case. The widow herself by her conduct, in admission and construction, has not construed the will to mean that she is entitled to one-third of all the decedent's property; so the majority opinion admits. I am of the opinion that the parties are bound by the course of construction and admission that they have pursued during the course of administration and the proceedings had in two courts. I am further of the opinion that only through such latter construction may the will be harmonized in all of its parts and the powers and directions of the testator effectuated.

The majority opinion, as I view it, adopts a half-way ground of construction based upon specious reasoning. It finds that the legacy to the widow is a general legacy; that the will provides for a class of residuary legatees; that there is an affirmative indication in the will that the amount of the widow's legacy was not to be affected by expenses of administration to any greater extent than other general legatees; that construction otherwise concerning expenses of administration would be equivalent to holding that the widow was a residuary legatee. If statutory distinctions in the mere use of names such as general legatees or residuary legatees should be followed, it seems apparent that the same reasoning which exempts expenses of administration ought likewise to exempt payment of debts, expenses of last sickness and funeral expenses; Yet, these deductions are permitted by the majority opinion: True, upon the ground

of acquiescence by the widow; Nevertheless, such ground of acquiescence necessarily contemplates a construction based upon the ascertainment of the distributable assets, instead of the gross estate. Furthermore, the majority opinion permits the widow, as a general legatee, to receive the additions and enhancement that accrues by reason of the administration of the estate and the expenses incurred in such administration; such as the receipts of interest, of dividends from stock and from crop proceeds during the course of administration extending some five years. Such rule of construction imposes no burden for the expenses incurred in securing such enhancement. The same rule, however, does not apply to the other general legatees to each of whom was awarded a specific sum of money. It would seem to be immaterial whether the testator used the word general legatee or residuary legatee in denominating his beneficiaries so long as he used the same yardstick with which to measure the amounts of benefits which, respectively, they should receive. The judgment of the trial court should be affirmed.


ROBINSON, J. (dissenting) : The first two items of the will in question read thus:

"First: I direct the payment of the expenses of my last sickness and funeral and just debts that I may be owing.

"Second: I give, devise and bequeath to my wife, Annie B. Murphy, one-third of my estate, both real and personal."

The question is on the estate devised to the widow. The will does not give to her any specified money or property. It merely gives to her a part or portion of the estate. If the will had devised to the widow a cash sum of money or any specified property, that would have constituted a disposal of the money or property within the meaning of the code. (Section 5722). Then the other property of the estate would be resorted to for the payment of debts in the order provided by statute: (1) Property not disposed of by the will. (2) Property which is devised or bequeathed to a residuary legatee. (3) Property which is not specifically devised or bequeathed.

Now, as I think, a will should be construed in the simplest and most logical manner so that when a person is called to make a will and to leave this earth he should not have to wait till he can read all the whole decisions of this and other courts from the Atlantic to the Pacific. Everyone knows that a party can dispose of only so much of his estate

as remains after the payment of his debts and the cost of administration. Everyone knows that when a party gives, grants and devises to any person all his estate, it means all his estate subject to his disposal, and that a half of it is half of the estate, that a third of it is only a third of the estate. Hence I hold that the widow is clearly entitled to one-third of the net estate, including interest and rents collected on the same; that there is no error in the decision of the county court and the district court; and that the same should be affirmed.

## On Rehearing

BIRDZELL, C. J. After reargument, a majority of the court remains of the opinion that the conclusion formerly reached is correct. This opinion is based upon the facts and circumstances relating to the property of the testator, the relation of the parties, the arrangement of the clauses, and the language of the will under consideration. In the petition for rehearing and upon the oral argument it was forcibly contended that the court had held in effect that a gift of one-third of the estate was a gift of one-third of the property, without regard to the debts or the expenses of administration. We do not so construe the holding. On the contrary, it is intimated in the original opinion that one-third would not necessarily be one-third of the gross estate, and authorities to this effect are cited. (In addition to the authorities therein cited, see Blakeslee v. Pardee, 76 Conn. 263, 56 Atl. 503; Bell v. Raymond, 20 Conn. 337; Wilcox v. Beecher, 27 Conn. 134; Horsey v. Horsey's Ex'rs, 1 Houst. (Del.) 438; Walker v. Hill, 73 N. H. 254, 60 Atl. 1017; Martin v. Fry, 17 Serg. & R. (Pa.) 426; Fisk v. McNiel, 1 How. (Miss.) 535; In re McRae, 179 Mich. 595, 146 N. W. 265.) We were of the opinion, however, that the will in question was ambiguous, and we are still of that opinion. In construing what the majority considers to be the ambiguous language of the will, we were brought to the conclusion that the expressed intention manifested was that the wife should take one-third of the property after the payment of the obligations mentioned in the immediately preceding paragraph, with the result that the one-third should be computed without taking into consideration the expenses of administration. These will, in effect, be borne ratably by her and the residuary legatees; whereas, under the distribution in the county court the entire expenses of administration were substracted before the basis for determining her distributable portion was arrived at. Thus, so far as the

debts are concerned, we do not hold that they were not properly subtracted. Beyond this, we deem it unnecessary to enlarge upon what was said in the original opinion.

CHRISTIANSON and GRACE, JJ., concur.

BRONSON, J. (dissenting). In view of the majority opinion upon the rehearing, I do not deem it necessary to add to my dissenting opinion heretofore filed. I adhere to the conclusions stated in such dissenting.

ROBINSON, J., concurs.